## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CARL PAYNE**                                    **CIVIL ACTION**

**VERSUS**                                        **NO.  12-2602**

**STEVE RADER, WARDEN**                           **SECTION "R"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background

The  petitioner, Carl Payne ("Payne") is a convicted inmate currently incarcerated in the Dixon Correctional Institute in Jackson, Louisiana.[2]  On June 17, 1989, Payne was charged by Bill of Information in Jefferson Parish with one count of being a convicted felon in possession of firearms, one count of possession with intent to distribute heroin, one count of being a convicted

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

felon in possession of body armor, and one count of possession of the controlled dangerous substance of Alprazolam.[3]  Payne entered a plea of not guilty to the charges on June 18, 2009.[4]

The record reflects that, in June 1989, Sergeant Elvin Modica of the Jefferson Parish Sheriff's Office received information from a confidential informant regarding illegal drug activity by a person known as "Pimp" at 1445 Lincoln Avenue in Jefferson Parish.[5]  After confirmation of the information received, a search warrant was executed at 1445 Lincoln Avenue.

When the officers arrived at the house to execute the warrant, Lieutenant Daniel Jewell, Jr. of the Jefferson Parish Sheriff's Office saw several individuals, including adults and children, in the carport of the residence.  When he exited his vehicle, a black male, later identified as Payne, fled into the residence.  Lieutenant Jewell chased the man into the residence and apprehended him about a foot into the door of a bedroom at the end of the hallway.  No one else was in the bedroom.  The officer removed $586.00 in cash from Payne's right rear pocket.  When asked where the money came from, Payne indicated that he did not have a job and the other answers he gave Sergeant Modica could not be verified.

Sergeant Modica and the other officers recovered certain items from the bedroom where Lieutenant Jewell caught Payne.  The officers seized items from the entertainment center in the bedroom, including a small .22 caliber revolver with three live cartridges, a clear plastic bag which held nine foil packages containing tan powder and another plastic bag containing light brown

---

[3]St. Rec. Vol. 3 of 6, Bill of Information, 6/17/09.  Alprazolam is the generic name for the anti-anxiety medications known as Xanax and Niravam. Physicians' Desk Reference, 66th ed., Generic/Brand Cross-Reference Table (2012).

[4]St. Rec. Vol. 3 of 6, Minute Entry, 6/18/09.

[5]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Payne*, 59 So.3d 1287, 1292-93 (La. App. 5th Cir. 2011); St. Rec. Vol. 6 of 6, 5th Cir. Opinion, 10-KA-46 c/w 10-KA-47, 1/25/11.

powder. The clear plastic bag was found on the same shelf as the revolver. The officers also seized a black leather wallet from the entertainment center, with Payne's Louisiana identification card showing 1445 Lincoln Avenue as his address, and a debit card. The officers also found a loaded Smith & Wesson .40 caliber handgun wrapped in a white t-shirt on the floor of the bedroom between the bunk beds and the dresser.

In the bathroom attached to Payne's bedroom, the officers seized a plastic sandwich bag with one small foil package and one clear plastic bag containing tan powder or alprazolam, a piece of foil with tan powder wrapped in a piece of plastic, a razor blade, aluminum foil, and two digital scales. In another part of the house, the officer located a sock which contained ten (10) Winchester .40 caliber Smith & Wesson rounds.

The officers also retrieved a bulletproof vest or "body armor" from Payne's bedroom closet. An investigation revealed that the vest belonged to Lieutenant Timmy Miller of the Jefferson Parish Sheriff's Office. The vest had been last seen about ten years before when it disappeared from inside of the officer's vehicle. Sergeant Modica also seized a Winchester 12 gauge semiautomatic shotgun from the same closet.

Other evidence seized in Payne's bedroom included a photograph of Payne, an envelope addressed to Payne, legal documentation, and a photocopy of case law with the name "Pimp" written on it twice. The officers also seized a clear plastic bag with light-colored powder which was found in a dog bowl in the kitchen.

Payne was tried before a jury on September 22, 2009, and was found guilty as charged on each of the four counts.[6]  On October 1, 2009, the Trial Court sentenced Payne to serve concurrent sentences at hard labor of 15 years in prison on count one, 30 years in prison on count two, and two (2) years in prison on each of counts three and four, with the sentences for counts one and two to be served without benefit of parole, probation, or suspension of sentence.[7]

The State filed a multiple bill charging Payne as a third felony offender.[8]  At a hearing held October 15, 2009, the Trial Court adjudicated Payne to be a third offender as to count two, vacated the prior sentence on that count, and resentenced Payne to serve 50 years in prison at hard labor without benefit of parole, probation, or suspension of sentence, to run concurrently with the other sentences, and to pay a fine of $5,000.00.[9]

On direct appeal, Payne's appointed counsel argued that the prison term imposed on count two was excessive and that the Trial Court erred in finding Payne to be a third felony offender.[10] Payne also filed *pro se* supplemental briefs in which he argued that the Trial Court erred in denying the defense's motion to suppress the evidence based on lack of probable cause for the warrant.[11]

---

[6]St. Rec. Vol. 3 of 6, Trial Minutes, 9/22/09; Verdict of the Jury, 9/22/09; St. Rec. Vol. 1 of 6, Trial Transcript, 9/22/09.

[7]St. Rec. Vol. 3 of 6, Sentencing Minutes, 10/1/09; St. Rec. Vol. 1 of 6, Sentencing Transcript, 10/1/09.

[8]St. Rec. Vol. 3 of 6, Multiple Bill, 10/1/09.

[9]St. Rec. Vol. 3 of 6, Multiple Bill Hearing Minutes, 10/15/09; St. Rec. Vol. 2 of 6, Multiple Bill Hearing Transcript, 10/15/09.

[10]St. Rec. Vol. 1 of 6, Appeal Brief, 2010-KA-0046, 2/8/10; Appeal Brief, 2010-KA-0047, 2/8/10.  The Louisiana Fifth Circuit eventually consolidated the appeals.  St. Rec. Vol. 2 of 6, 5th Cir. Order, 10-KA-46 c/w 10-KA-47, 6/11/10.

[11]St. Rec. Vol. 1 of 6, Supplemental Appeal Brief, 2010-KA-0046, 3/30/10; St. Rec. Vol. 2 of 6, Supplemental Appeal Brief, 2010-KA-0047, 3/30/10.

On January 25, 2011, the Louisiana Fifth Circuit affirmed Payne's convictions and sentences, as amended, finding no merit in any of the errors raised.[12]   On its review for errors, the Court *inter alia* notified Payne of the delays for seeking post-conviction relief and amended the multiple offender sentence on count two to remove the prohibition on parole eligibility in compliance with the multiple offender statute.

The Louisiana Supreme Court denied Payne's related writ application without stated reasons on September 16, 2011.[13]   Payne's convictions and sentences became final 90 days later, on December 15, 2011, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S.Ct. Rule 13(1).

In the meantime, on November 3, 2011, Payne filed an application for post-conviction relief in the Trial Court raising seven grounds of ineffective assistance of counsel when counsel:[14] (1) failed to investigate, interview, and subpoena witnesses; (2) failed to move to sever the counts; (3) failed to move to suppress the illegally seized evidence and allowed illegally seized documents to be introduced that identified Payne by the name Pimp; (4) failed to object to the admissibility of other crimes evidence and inflammatory statements; (5) failed to object to the State's failure to lay a foundation for the other crimes evidence and inflammatory statements; (6) failed to object to

---

[12]*State v. Payne*, 59 So.3d at 1287; St. Rec. Vol. 6 of 6, 5th Cir. Opinion, 10-KA-46 c/w 10-KA-47, 1/25/11.

[13]*State v. Payne*, 69 So.3d 1141 (La. 2011); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2011-KO-0387, 9/16/11; La. S. Ct. Writ Application, 11-KO-387, 2/24/11 (dated 2/18/11); La. S. Ct. Letter, 2011-KO-387, 2/24/11 (showing postal meter 2/21/11).

[14]St. Rec. Vol. 3 of 6, Application for Post-Conviction Relief, 11/14/11 (dated 11/3/11).

obtain the identification of the confidential informant which failed to preserve his right to confrontation; and (7) the ineffective assistance of counsel entitled him to an evidentiary hearing.

After receiving the State's opposition response, the Trial Court denied relief on March 9, 2012, finding each of the grounds to be without merit under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and related state law.[15]

The Louisiana Fifth Circuit denied Payne's subsequent writ application finding no error in the Trial Court's ruling.[16] The Louisiana Supreme Court also denied Payne's related writ application without stated reasons on September 28, 2012.[17]

## II.   **Federal Petition**[18]

On October 30, 2012, the clerk of this Court filed Payne's federal petition for habeas corpus relief in which he raised the following grounds for relief:[19] (1), (2) The Trial Court erred in denying the defense's motion to suppress where the affidavit failed to establish probable cause or reliability of the Confidential Informant; (3) The Trial Court erred in finding Payne to be a third felony offender based on unlawful prior convictions; (4) The Trial Court erred in imposing an excessive sentence; (5) he was denied effective assistance of counsel when counsel (a) failed to investigate,

---

[15]St. Rec. Vol. 4 of 6, Trial Court Order, 3/9/12; State's Response, 1/23/12.

[16]St. Rec. Vol. 4 of 6, 5th Cir. Order, 12-KH-337, 5/8/12; St. Rec. Vol. 5 of 6, 5th Cir. Writ Application, 12-KH-337, 4/13/12 (postmarked 4/9/12, dated 4/4/12).

[17]*State ex rel. Payne v. State*, 98 So.3d 836 (La. 2012); St. Rec. Vol. 6 of 6, La. S.Ct. Order, 2012-KH-1192, 9/28/12; La. S.Ct. Writ Application, 12-KH-1192, 5/30/12 (postal metered 5/24/12, dated 5/21/12); La. S.Ct. Letter, 2012-KH-1192, 5/31/12 (showing postal meter 5/24/12).

[18]As recognized by the State, Payne's first federal habeas petition and a motion to stay were filed on October 13, 2011, under Civ. Action No. 11-2767"R"(4) (Rec. Doc. Nos. 3,4).  On December 29, 2011, this Magistrate Judge recommended that Payne's motion to stay be denied.  Civ. Action No. 11-2767"R"(4), Rec. Doc. No. 15.  The District Judge construed Payne's objections as a motion to voluntarily dismiss the unexhausted petition, granted the request, and dismissed the case without prejudice on January 24, 2012.  *Id.*; Rec. Doc. Nos. 16, 18.

[19]Rec. Doc. No. 3.  Payne has seven issues misnumbered as eight.

interview, and subpoena witnesses, (b) failed to move to sever the counts, (c) failed to move to suppress the illegally seized evidence or object to the admissibility of the illegally seized documents that identified Payne by the name Pimp, (d) failed to object to the admissibility of other crimes evidence and inflammatory statements, (e) failed to object to the State's failure to lay a foundation for the other crimes evidence and inflammatory statements, (f) failed to object to or obtain the identity of the Confidential Informant to preserve his right to confrontation, and (g) the ineffective assistance of counsel entitles him to an evidentiary hearing; and (6), (7) the cumulative errors of counsel render his conviction and detention unconstitutional.

The State filed a response in opposition to the petition arguing that Payne's first three claims fail to state a cognizable federal claim and that he failed to establish that the state courts' denial of relief was contrary to or an unreasonable application of federal law.[20]

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[21] applies to this petition, which is deemed filed in this Court no later than October 8, 2012.[22] The threshold questions in habeas review under the amended statute are whether

---

[20]Rec. Doc. No. 9.

[21]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[22]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Payne's federal habeas petition on October 30, 2012, when pauper status was granted. Payne dated his signature on the form application on October 8, 2012, which is the earliest date appearing in the record on which he could have delivered the pleadings to prison officials for mailing to the Court.

the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). As indicated by the State, the record reflects that Payne's petition was timely filed, he has exhausted available state court remedies, and none of his claims are in procedural default.

## IV.    Standards of Review on the Merits

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1398 (2011).

## V.   Illegal Search and Seizure (Claim Nos. 1 and 2)

In his first two claims, Payne alleges that the state trial court erred in denying his pretrial motion to suppress the evidence seized from his mother's home for lack of probable cause to support the issuance of the search warrant based on unreliable information from an undisclosed Confidential Informant. The State argues that this Fourth Amendment issue is not subject to this Court's review.

It is well settled that Fourth Amendment violations are generally not cognizable on federal habeas review. *Stone v. Powell*, 428 U.S. 465, 480-81 (1976). In *Stone*, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494 (footnotes omitted). A "full and fair" hearing as contemplated by *Stone* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court. *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).

The United States Court of Appeals for the Fifth Circuit has further interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity." *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196 (2003). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Caver*, 577 F.2d

at 1192.  "[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under Stone."  *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980).

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone* prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful.  *Janecka*, 301 F.3d at 320-21.  Even if a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the *Stone* bar to apply.  *Id*. at 320.

The Fifth Circuit also has held that the *Stone* bar applies despite an error by the state court in deciding the merits of the Fourth Amendment claim.  *Swicegood v. Alabama*, 577 F.2d 1322, 1324-25 (5th Cir. 1978); *Woodard v. Thaler*, 702 F. Supp.2d 738, 759-60 (S.D. Tex. 2010) ("Even if the state court improperly applied its own procedural law in refusing to consider Woodard's Fourth Amendment argument," the *Stone* bar still applies.) (citing *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006)).  Likewise, even when the state courts err in the disposition of the Fourth Amendment claim on procedural grounds, the *Stone* bar still applies "with equal force."  *Williams*, 609 F.2d at 219-20.

Therefore, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of fourth amendment claims on the merits, the rationale of *Caver* dictates that *Swicegood*'s application of *Stone* despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment

claims." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980); *see also Janecka*, 301 F.3d at 321 (same).  Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded. *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987); *Davis*, 803 F.2d at 1372.

Payne has recognized that his Fourth Amendment claims were addressed in the state courts in the pretrial proceedings and on post-conviction review.  He therefore has not alleged or demonstrated that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims.  Moreover, "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." *Bailey v. Cain*, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) (Order adopting Report and Recommendation).

In this case, the record demonstrates that Payne had ample opportunity to, and he and his counsel did, raise his Fourth Amendment claims by pretrial motions to suppress.[23]  The state trial court held a full evidentiary hearing on the issue on September 17, 2009 at which the motions were denied as meritless.[24]  Prior to that, Payne submitted his Fourth Amendment claims to the Louisiana Fifth Circuit; the court granted the writ and denied relief on the showing made instructing Payne to first pursue a motion to suppress in the trial court.[25]  As outlined previously, Payne raised the issues again on direct appeal, and the Louisiana Fifth Circuit thoroughly reviewed his claims and found

---

[23]St. Rec. Vol. 3 of 6, Omnibus Motions, 6/19/09; Motion to Suppress, 6/24/09.

[24]St. Rec. Vol. 3 of 6, Minute Entry, 9/17/09; St. Rec. Vol. 1 of 6, Hearing Transcript, 9/17/09.

[25]St. Rec. Vol. 3 of 4, 5th Cir. Order, 09-K-461, 9/2/09.

them to be meritless.[26] That review was confirmed by the Louisiana Supreme Court's denial of his post-appeal writ application.[27]

The record, therefore, demonstrates that Payne was provided with the opportunity to and did present his Fourth Amendment claims to the state courts, although his efforts were unsuccessful. After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims." *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) (quotations and citation omitted). The fact that petitioner may disagree with the state courts' decision to deny relief is not sufficient to overcome the *Stone* bar to federal habeas corpus review. *Janecka*, 301 F.3d at 320-21. The review on post-conviction at all levels of the state courts was sufficient to meet due process requirements.

Payne is not entitled to federal habeas court review of his Fourth Amendment claims. Because he received and exercised the opportunity for a full and fair hearing in the state courts, *Stone* bars consideration of his Fourth Amendment claim here. He is not entitled to relief on these claims.

## VI.    Unlawful Prior Convictions Used in Multiple Bill Proceeding (Claim No. 3)

Payne argues that the State failed to prove the legality of the predicate convictions and therefore did not meet the burden of proof required under Louisiana law to establish him to be a third felony offender. Payne argues that the prior convictions were unlawful because he was not placed on notice of the maximum sentence exposure before entering the prior guilty pleas or that the

---

[26] *State v. Payne*, 59 So.3d at 1295-98; St. Rec. Vol. 6 of 6, 5th Cir. Opinion, 10-KA-46 c/w 10-KA-47, pp. 8-13, 1/25/11.

[27] *State v. Payne*, 69 So.3d at 1141; St. Rec. Vol. 6 of 6, La. S.Ct. Order, 2011-KO-0387, 9/16/11.

convictions arising from his pleas later could be used in a multiple bill proceeding.  The State argues that the prior pleas are presumed valid under Supreme Court law, and the State could properly rely on them in the multiple bill proceedings.

Payne raised this issue to the Louisiana Fifth Circuit on direct appeal.  The Court resolved that the State provided sufficient evidence required by Louisiana law to support the multiple offender adjudication, including proof that the prior guilty pleas were made by Payne and that he was represented by counsel at that time.  This was the last reasoned decision on the issue.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate the basis for its ruling, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

As argued by the State, Payne is actually challenging the validity of the two predicate convictions used in his multiple bill proceeding on the basis that he was not fully notified of the maximum sentence exposure or the potential use of the convictions in a habitual offender proceeding.  For these claims, he is not entitled to federal habeas review.

The language of 28 U.S.C. § 2241(d) "gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (quoting 28 U.S.C. § 2241(c)(3)); 28 U.S.C. § 2254(a).  Thus, to be eligible for federal habeas corpus relief, a petitioner must be "in custody" and must have exhausted his available state court remedies as to the conviction being challenged.  *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir. 1987).  The United States Supreme Court has interpreted this statutory language to require that the

habeas petitioner be in custody for the conviction or sentence under attack at the time the petition is filed. *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 400-01 (2001).

Whether a petitioner is "in custody" is determined as of the date on which the federal habeas petition is filed. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968); *Port v. Heard*, 764 F.2d 423, 425 (5th Cir. 1985). When the jurisdictional prerequisite of custody is met at the time of filing, jurisdiction is not defeated by the petitioner's subsequent release from custody. *Carafas*, 391 U.S. at 238; *Port*, 764 F.2d at 425.

As the United States Supreme Court held in *Lackawanna*, when a habeas petitioner is no longer serving the sentences imposed pursuant to his old convictions, he cannot bring a federal habeas action directed at challenging those convictions. However, where his current Section 2254 petition can be (and has been) construed as asserting a challenge to the sentence he is currently serving, as enhanced by the allegedly invalid old conviction, he satisfies the "in custody" requirement for jurisdictional purposes. *Lackawanna*, 534 U.S. at 401-02.

In *Lackawanna*, however, the Supreme Court also held that, although jurisdiction to consider such a claim exists, relief is generally unavailable to a state prisoner through a petition for a writ of habeas corpus, when the prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody. "[W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. . . . If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior

15

conviction was unconstitutionally obtained." *Id.* at 403-04 (citation omitted). This is the exact situation presented by Payne to this Court. Because the prior convictions are conclusively valid, the Court cannot address his challenge to the use of the prior convictions to enhance his current sentence.

The *Lackawanna* Court recognized a single exception to this rule relating to Sixth Amendment claims of failure to appoint counsel. No such claim is made in this case, and there is no recognized exception to the *Lackawanna* rule that would apply to the challenges raised by Payne.[28]

For the foregoing reasons, this court will not revisit Payne's prior convictions, which are "regarded as conclusively valid." *Lackawanna*, 534 U.S. at 403. Federal habeas relief is unavailable for Payne's challenge to the use of his old and valid convictions to enhance the sentence he is currently serving as a multiple offender. Payne is not entitled to relief on this issue.

## VII.   Excessive Sentence (Claim No. 4)

Payne argues that the 50-year-sentence he received as a multiple offender on count two is excessive in violation of the Louisiana Constitution and sentencing laws, because there was no proof of overt criminal activity or consideration of other mitigating factors allowed under Louisiana law.[29] The State argues that the state courts' denial of relief on this issue was not contrary to or an unreasonable application of federal law.

---

[28]As explained by the Sixth Circuit in *Abdus–Samad v. Bell*, 420 F.3d 614, 630 (6th Cir. 2005), a three-justice plurality of the *Lackawanna* Court speculated that other exceptions to this rule of federal habeas non-reviewability might exist in other circumstances, including (1) where a state court, without justification, has refused to rule on a properly presented constitutional claim and (2) where a defendant subsequently obtains compelling evidence of his actual innocence. Petitioner has not made such allegations and the Court does not find that these circumstances exist here.

[29]As noted by the State and the state appellate court, Payne's original 30 year sentence on count two was vacated making any challenge thereto moot. Payne also does not challenge the fine imposed or the designation of sentencing benefits as amended by the state appellate court.

Payne's appointed counsel raised this issue on direct appeal.  The Louisiana Fifth Circuit found that the state trial court did not err in sentencing him to 50 years, which was well within the sentencing range for a third offender and that the record supported the charge in light of his criminal behavior and the concurrent charges.  *See Ylst*, 501 U.S. at 802.

Under federal habeas review, an excessive sentence claim presents a question of law.  *Davis v. Cain*, 44 F. Supp. 2d 792, 798 (E.D. La.1999); *Jones v. Kaylo*, No. 99-0567, 1999 WL 544680, at *1 (E.D. La. July 26, 1999) (Berrigan, J.) ("The question of excessive sentence is purely a question of law . . . ."); *see also Copeland v. Tanner*, No. 12-2801, 2013 WL 3776344, at * 12 (E.D. La. July 15, 2013) (Milazzo, J.) (Order adopting report and recommendation); *Chatman v. Miller*, No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005) (McNamara, J.) (Order adopting report and recommendation).

To the extent Payne challenges the state courts' compliance with Louisiana's sentencing laws and the Louisiana Constitution, his claim is not the concern of federal habeas review.  *Butler v. Cain*, 327 F. App'x 455, 457 (5th Cir. 2009).  Instead, federal courts afford broad discretion to a state trial court's sentencing decision that falls within statutory limits.  *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987); *Turner v. Cain*, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. Oct. 15, 1999) (Table, text in Westlaw) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence).  As will be discussed, the sentence imposed upon Payne was clearly within those statutory limits.

When a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is shown to be grossly disproportionate to the gravity of the offense.  *See Harmelin v. Michigan*, 501 U.S. 957, 993-95 (1991); *Solem v. Helm*, 463 U.S. 277, 290-91 & n.17

(1983).  "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions.  *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).  If the sentence is not "grossly disproportionate," in the first instance, the inquiry is finished.  *United States v. Gonzales*, 121 F.3d 928 (5th Cir. 1997), *cert. denied*, 522 U.S. 1063 (1998).  As the Supreme Court has noted, outside the context of capital punishment, successful proportionality challenges are "exceedingly rare", and constitutional violations are sustained in only "extreme" or "extraordinary" cases.  *Ewing*, 538 U.S. at 23-30 (citations omitted); *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003).

In count two, Payne was convicted of possession with intent to distribute heroin in violation of La. Rev. Stat. Ann. § 40:966(A).[30]  A person convicted under that provision faced a sentence of imprisonment for not less than five years nor more than fifty years at hard labor, with at least five years to be served without benefit of probation or suspension of sentence and may be fined not more than $50,000.00.  Payne was initially sentenced to 30 years, well within that range. La. Rev. Stat. Ann. § 40:966(B)(1).

As a third felony offender, however, Payne on that count faced imprisonment for a term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction.  La. Rev. Stat. Ann. § 15:529.1(A)(3)(a).  In Payne's case, his penalty range was 33.3 years to 100 years in prison.  His sentence of 50 years in prison, was well within and on the lower end of that range.

---

[30]Heroin is a Schedule I narcotic in Louisiana.  La. Rev. Stat. Ann. § 40:964(B).

The Louisiana courts regularly impose this sentence on third offenders under similar circumstances. *See, e.g.*, *State v. Wallace*, 71 So.3d 1142, 1152 (La. App. 2d Cir. 2011) (50 years for third offender for possession of between 28 to 200 hundred grams of cocaine). Payne had at least one prior narcotics conviction and one prior violent crime conviction. His convictions here were based on possession of significant quantities of two different narcotics and his possession of multiple weapons and ammunition located in and around the room in which he lived and which was under his control at his mother's home, a place where children were also present. Payne has not demonstrated that his sentence was disproportionate or otherwise unconstitutional under the circumstances.

The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law. He is not entitled to relief on this issue.

## VIII.   <u>Ineffective Assistance of Counsel (Claim Nos. 5, 6, 7)</u>

Payne alleges that he received ineffective assistance from his trial counsel based on several grounds: (a) counsel failed to investigate, interview, and subpoena witnesses; (b) counsel failed to move to sever the counts; (c) counsel failed to move to suppress the illegally seized evidence and did not object to introduction of illegally seized documents that identified him by the name Pimp; (d), (e) counsel failed to object to the admissibility of other crimes evidence and inflammatory statements and did not object to the State's failure to lay a foundation for the admissibility other crimes evidence and inflammatory statements; and (f) counsel failed to object to or obtain the identity of the confidential informant to preserve his right to confrontation. Payne also argues that counsel's cumulative errors violated his constitutional rights (Claim Nos. 6, 7) and that he is entitled to an evidentiary hearing on the claim. (Claim No. 5(g)).

19

The State argues that Payne has failed to establish that the state courts's denial of relief was contrary to or an unreasonable application of federal law or that he is entitled to relief or an evidentiary hearing.

Payne asserted these same arguments on state post-conviction review. The Trial Court, relying on the holding in *Strickland*, denied each of Payne's ineffective assistance of counsel claims as meritless. That was the last reasoned decision where the ruling was affirmed without additional reasons by the Louisiana Fifth Circuit and Supreme Court. *See Ylst*, 501 U.S. at 802.

### A.   <u>Evidentiary Hearing Not Warranted (Claim No. 5(g))</u>

The Court will proceed to address Payne's ineffective assistance of counsel claims without an evidentiary hearing. As discussed by the Supreme Court in *Cullen*, 131 S.Ct. at 1400-01, the decision to hold an evidentiary hearing is a statutorily mandated determination limited by the provisions of § 2254(e)(2), which restricts evidentiary to those instances where the claim relies on a new rule of law, retroactively applied on collateral review, for which the predicate could not have been previously discovered with due diligence and where the facts would be sufficient to undermine a guilty verdict by clear and convincing evidence. *See Cullen*, 131 S.Ct. at 1400-01. The Court further recognized that where these factors are not met, evidence presented for the first time on federal habeas review may not be considered on federal habeas review to address the merits of the claims under § 2254(d)(1). *Id.*

Thus, the federal habeas court is limited to review of only the evidence and record before the State court that reviewed the claim at issue. *See Cullen*, 131 S.Ct. at 1400; *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011); *Gallow v. Cooper*, 505 F. App'x 285, 295-96 (5th Cir. 2012); *Thomas v. Thaler*, No. 12-50280, 2013 WL 1297269, at *4-*5 (5th Cir. Apr. 2, 2013). In other

words, this Court will not consider evidentiary materials not already presented to the state courts for their review where Payne has not based his claim on a new, retroactive rule of law under the provisions of § 2254(e)(2).  There is no basis to grant an evidentiary hearing in this case.

### B.   Review of the Individual Grounds (Claim Nos. 5(a)-(f))

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009).  The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, applied by the Louisiana courts, is the appropriate standard for judging the performance of counsel.  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.  The analysis of

counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689).  "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S.Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694).  This standard requires a "substantial," not just

"conceivable," likelihood of a different result. *Harrington*, 131 S.Ct. at 792. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 131 S.Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

## (a)    Failure to Investigate, Interview, and Subpoena Witnesses

Payne argues that counsel's performance was deficient and prejudicial when he failed to investigate, interview and subpoena seven witnesses, Joanna Payne, Previn Wong, Shanika Payne, Nadia Jarrell, Courtney Payne, Nicole Kelson, and Tammy White, each of whom would have testified that he or she was a "resident" at the Lincoln Avenue home, that the Jefferson Parish Sheriff's Deputies entered the home on Lincoln Avenue without presenting a warrant, and that he or she never saw a warrant. The State argues that Payne has failed to establish any error by counsel or that counsel's decision not to call the witnesses was not unreasonable or prejudicial, noting that White did testify at trial.

In considering this claim on post-conviction review, the Trial Court determined that the potential testimony of these witnesses would have had no impact on the legality of the warrant or the evidence presented at trial. The Court also noted that White in fact testified at trial that she did not see the warrant, and her testimony did not alter the fact that the deputies had a warrant. The Court resolved that counsel did not act deficiently and the failure to call these witnesses was not prejudicial as there testimony would in no way have impacted the evidence of his guilt.

"'A defendant who alleges a failure to investigate on the part of his counsel must allege <u>with</u> specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" (citation omitted) *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998). A petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Rather, to prevail

on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. *See Moawad*, 143 F.3d at 948; *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

In this case, Payne has not addressed any failing in counsel's investigation or preparation of the case.  His generalized claim, or mere use of the phrase, in that regard is wholly unsupported and conclusory.  *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").  Payne has not specified what, if anything, further investigation would have provided his counsel or what exculpatory information was available that was not discovered by counsel's own investigation and preparation.  This is not sufficient to establish a deficiency in counsel's performance.  *Moawad*, 143 F.3d at 948.

Furthermore, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"  *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (*quoting Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).  "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'"  *Williams v. Cockrell*, 31 F. App'x 832 (5th Cir. 2002) (*quoting Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997)).  In this case, Payne has suggested to what the witnesses may have testified, but without any support beyond his conjecture.  Nevertheless, the reasons provided by the state trial court for denying Payne's claim are supported by the record and entitled to deference.

First, White who is Payne's mother, did testify at trial after being subpoenaed by the prosecution.[31]  Payne in fact quotes some of her testimony in his memorandum.  Counsel had no reason to subpoena a witness who was already subpoenaed to trial.

The record also shows that, upon questioning by defense counsel, White testified that she did not see or receive a copy of the warrant when the deputies entered her home.[32]  She testified that the a deputy returned the next day and gave her husband a copy of the warrant.[33]  Counsel therefore took the opportunity to question White about the very issue Payne claims he failed to present.  Payne's premise is factually baseless and fails to establish a deficiency in counsel's performance.

Furthermore, as noted by the respondent and the state trial court, whether the witnesses saw the warrant has no relevance to the validity of the warrant itself nor does it contradict the proof of Payne's guilt.  Thus, Payne has failed to establish any prejudice arising from counsel's failure to present the testimony of these potential witnesses which would have been cumulative of White's testimony.  The fact that the defense was not successful, *i.e.* that Payne was convicted, does not mean that counsel's actions were deficient.  *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689 (citations omitted).  Payne has provided no basis to undermine the deference due his counsel's trial decisions or that due the denial of relief by the state courts.

---

[31]St. Rec. Vol. 1 of 6, Trial Transcript, p. 26, 9/22/09.

[32]*Id*. at p. 28.

[33]*Id*. at pp. 29-30, 31.

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*.  Payne is not entitled to relief on this claim.

       **(b)**       **Failure to Move to Sever the Counts**

Payne also complains that his counsel failed to file a pretrial motion to sever the counts resulting in an improper and prejudicial joint trial of the charges.  The State argues that the joinder of offenses was proper under Louisiana law leaving no basis for counsel to have pursued a motion.

In reviewing this claim on post-conviction, the state trial court determined that the offenses were properly joined under Louisiana law, and counsel did not act deficiently or prejudicially.  The state courts reasoning is legally sound and entitled to deference.

Louisiana law provides for the joinder of criminal charges in one bill of information or indictment where there are common circumstances:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

La. Code Crim. P. art. 493.

In addition, La. Code Crim. P. art. 493.2 also permits joinder of criminal charges based on sentencing exposure:

> [O]ffenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

In Louisiana, "the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." La. Code Crim. P. art. 61.  The prosecutor's decision to join criminal charges in a bill of information is generally not subject to objection by the defense.  *See State v. Brooks*, 541 So.2d 801, 810-11 (La. 1989) (citing La. Code Crim. P. art. 61 as providing broad discretion to the district attorney in determining whether to sever counts in an indictment); *State v. Burnett*, No. 2007-KA-2523, 2008 WL 2064975, at *3-*4 (La. App. 1 Cir. 2008) (unpublished) (finding that the district attorney has the discretion to prosecute offenses separately or in aggregate) (citing *State v. Joles*, 492 So.2d 490, 495 (La. 1986) (addressing joinder of theft counts)).  However, "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."  La. Code Crim. P. art. 495.1; *State v. Burks*, 905 So.2d 394, 399 (La. App. 5th Cir. 2005).  A defendant claiming prejudice has a heavy burden to prove that severance of the charges is warranted.  *State v. Jones*, 33 So.3d 306, 325 (La. App. 5th Cir. 2010) (citing *Burks*, 905 So.2d at 399).

In Payne's case, the record discloses no requirement under state law that any count in the bill of information be severed and tried separately as a matter of law.  Payne was charged with (and eventually convicted of) four felonies in the bill of information.  A felony, under Louisiana law, "is any crime for which the offender may be sentenced to death or imprisonment at hard labor."  La. Rev. Stat. Ann. § 14:2.  Payne does not challenge the fact that each of the charges against him were of the same character, arose from a common activity, were triable by the same mode of trial, and could be charged in the same bill of information.  *See* La. Code Crim. P. art. 782.

28

Furthermore, under Louisiana law, "there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood the jury will be confused by the evidence of more than one crime." *State v. Lewis*, 557 So.2d 980, 984 (La. App. 4 Cir. 1990). In determining whether joinder of two or more offenses would result in prejudice, the Louisiana courts consider the following factors:

> (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (3) whether the defendant would be confounded in presenting his various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, considering the nature of the charges, the charging of several crimes would make the jury hostile.

*State v. Lewis*, 736 So.2d 1004, 1015 (La. App. 4th Cir. 1999).

Payne has not argued or established that the jury was impacted in any of the ways listed above. Neither Payne nor the record demonstrates that the jury was confused or made hostile by the various counts or the evidence. Having failed to make such a showing, Payne has not identified any error in the joinder of the charges against him that would have warranted objection by his counsel. Counsel's decision not to make a meritless objection does not constitute deficient or prejudicial performance. *See Green v. Johnson*, 160 F.3d 1029, 1037-38 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*. Payne is not entitled to relief on this claim.

**(c)** **Failed to Move to Suppress or Object to the Illegally Seized Evidence Containing the Name "Pimp"**

Payne alleges that his counsel provided ineffective assistance in allowing the State to admit documents bearing the name "Pimp" without pursuing a ruling on the motion to suppress the identification.  He argues that the use of the documents to confirm an identification made only by the Confidential Informant tainted the jury and rendered his trial unfair.  The State argues that Payne has failed to establish a legal basis for counsel to have objected to the documentation or trial testimony referencing the identification of or connection to him as Pimp.

The state trial court considered this claim in its post-conviction review.  The court determined that the reference at trial to "Pimp" was part of the *res gestae* of the case explaining the basis for the search warrant and the deputies presence at the house.  The Court also noted that there was no issue regarding an identification process because the Confidential Informant was not asked to identify Payne.  Instead, the only identification conveyed to the jury was that made by Detective Modica who was present when Payne and the evidence were located and seized on the day of the arrest.  For these reasons, the state trial court found no merit to the underlying claim of misidentification or any error by counsel.

The Court first notes that Payne's use of the phrase "illegally seized" is conclusory an unsupported by the record.  As previously discussed, the state courts resolved that the search warrant was lawfully obtained and the search and seizure did not violate Louisiana law or the Fourth Amendment.  Thus, there would have been no reason for his counsel to object to the evidence at trial on the basis that it was obtained through an illegal search or seizure.

The true focus of Payne's claim here is that his counsel failed to challenge the references or identification made to him as "Pimp."  Payne is incorrect, however, in concluding that he was

identified by the Confidential Informant or anyone else as "Pimp."  On the contrary, as determined by the state court, the record does not indicate that the Confidential Informant ever identified Payne as the person known to be "Pimp" or that the Confidential Informant asked to identify Payne or that the Confidential Informant made any connection for the deputies between the name "Pimp" and Payne.

Instead, the references to "Pimp" at trial were made briefly during Sergeant Modica's testimony when he confirmed that he received information that led to the investigation of a black male known as "Pimp" at the Lincoln Avenue address.[34]  The Sergeant also testified that, while in Payne's bedroom, the deputies located and seized copies of case law with "Pimp" written on top.[35]

Based on the record, there was no out-of-court identification process (or misidentification) involving the Confidential Informant for counsel to challenge.  Counsel does not act unreasonably in failing to make a baseless motion or objection in that regard.  *Green*, 160 F.3d at 1037.

Furthermore, the trial transcript does not contain any evidence or testimony specifically linking or identifying Payne to the name "Pimp" or *vice versa*.  Instead, the testimony of Sergeant Modica and Lieutenant Jewel indicated that, upon there execution of the search warrant, Payne ran into the house into the room, his bedroom, where the drugs and weapons, in addition to the envelopes and papers addressed to him and the papers with the word "Pimp," were initially located and which formed the basis of his arrest.  The identification of Payne as the perpetrator was not connected to the name "Pimp."  Instead, it was made by the officers who were present for the search

---

[34]St. Rec. Vol. 1 of 6, Trial Transcript, p. 46, 9/22/09.

[35]Id. at pp. 80, 81.

and arrest.  On this basis, the Louisiana court found any references to "Pimp" to be part of the *res gestae* of the crime and not part of some identification process.

Louisiana law generally prohibits the admission of "other crimes evidence," or evidence of criminal conduct uncharged in the indictment, with exceptions for proving identity, system or *res gestae*. *Robinson v. Whitley*, 2 F.3d 562, 566 (5th Cir. 1993) (citing *State v. Prieur*, 277 So.2d 126, 128 (La. 1973)).  Under Louisiana law, evidence of other crimes may be admitted when it forms part of the *res gestae* of the charged offense.  *Robinson*, 2 F.3d at 566.

The Louisiana Supreme Court has explained *res gestae* in this context to include "testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances." *State v. Colomb*, 747 So.2d 1074, 1076 (La. 1999) (*quoting State v. Molinario*, 383 So.2d 345, 350 (La. 1980)).  The acceptable evidence will "complete the story of the crime on trial by proving its immediate context of happenings near in time and place."  *Id*. (quoting *State v. Haarala*, 398 So.2d 1093, 1098 (La. 1981)).  Where the evidence meets this exception, there is no prejudice arising from counsel's failure to object to its admissibility at trial.  *Accord Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (no deficient performance or prejudice when counsel fails to move for mistrial based on *res gestae* testimony).

In this case, the officer's testimony related to "Pimp" and the documents bearing that word reported an integral part of the total transaction, starting with the basis for the warrant that led them to Payne's bedroom.  Thus, Payne has not shown that counsel's failure to object or to seek exclusion of the documents was deficient or prejudicial under *Strickland*.

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*.  Payne is not entitled to relief on this claim.

### (d), (e) Failed to Object to the Admissibility of Other Crimes Evidence and Inflammatory Statements

Payne argues that his counsel's performance was deficient and prejudicial when he failed to object to the prosecution's reliance on his past criminal history during trial.  Payne also argues in a similar manner that counsel was deficient in failing to object to the State's failure to lay a foundation for the admissibility of the same documentary evidence.

The State argues that the testimony of Deputy Aischa Prudhomme was necessary to meet its burden of proof to establish that Payne was a felon in possession of a weapon and that the State laid a proper foundation for the introduction of the records to prove the prior convictions.

The Trial Court denied post-conviction relief on this claim finding that the prosecution was required to present evidence of the prior offenses to prove the felon in possession charge.  The Court also found that the State laid a proper foundation as required by Louisiana law.  The court resolved that his claims were without merit and that counsel did not act deficiently.

In his memorandum, Payne specifically references the exhibits admitted through Deputy Prudhomme's trial testimony showing that the fingerprints established him to be the same person as the person convicted in the prior two cases.  In addition, Payne also quotes the trial testimony of Sergeant Modica regarding documents seized from his bedroom that also were related to his prior criminal proceedings.

While the state court and the respondent in this case addressed the propriety of Prudhomme's testimony, neither mention Payne's reference to State's Exhibit 32 introduced during Sergeant Modica's testimony.  The Court nevertheless will consider both facets of Payne's claim.

First, as determined by the state court as to the evidence introduced through Deputy Prudhomme, there was no basis for counsel to enter an objection. Under Louisiana law, to sustain a conviction for possession of a firearm by a convicted felon in violation of La. Rev. Stat. Ann. § 14:95.1, the State had to prove the following elements of the offense: (1) possession of a firearm, (2) prior conviction for an enumerated felony, (3) absence of the ten-year statutory limitation period, and (4) the general intent to commit the crime. *State v. Caffrey*, 15 So.3d 198, 202 (La. App. 5th Cir. 2009); *State v. Ray*, 961 So.2d 607, 609-10 (La. App. 2d Cir. 2007); *State v. Robert*, 956 So.2d 750, 753 (La. App. 2d Cir. 2007). The State therefore was required to prove that Payne was a convicted felon when he was in possession of the weapons. *See State v. Ronquille*, 26 So.3d 823, 826 (La. App. 5th Cir. 2009). The general rule in Louisiana is that the prosecution is entitled to prove its case by evidence of its own choice. *State v. Galle*, 107 So.3d 916, 929 (La. App. 4th Cir. 2013) (citing *State v. Lomax*, 35 So.3d 396, 403 (2010)).

In this case, the prosecution presented the testimony of Deputy Prudhomme who identified Payne's fingerprints as the same as those taken in the prior convictions. This is a proper means of presenting the evidence and proving the identity of the accused as a felon in possession. *See State v. Becnel*, 904 So.2d 838, 847 (La. App. 5th Cir. 2005). The Louisiana Supreme Court has held that proof of any or all of a defendant's prior convictions for the enumerated felonies satisfies an essential element under La. Rev. Stat. Ann. § 14:95.1. *State v. Ball*, 756 So.2d 275, 277 (1999) (citing *State v. Sanders*, 357 So.2d 492, 493 (La. 1978). The Court also established that the specific prior offense were "absolutely necessary" to fully charge the offense of possession of a firearm by a convicted felon. *Ball*, 756 So.2d at 280. The presentation of proof of both of his prior felonies was not unduly prejudicial and instead met a required element of the charged offense under

Louisiana law.  *See State v. Willis*, 843 So.2d 592, 598-99 (La. App. 2d Cir. 2003).  For this reason, counsel had no basis to object to the foundation laid or the admissibility of the proof of his prior convictions.

In addition, as shown by the testimony, the prosecution sought to introduce other documents seized from Payne's bedroom, which included legal documents related to his prior crimes.  Contrary to Payne's argument, counsel did in fact lodge an objection to the introduction of the documents, including transcripts and writ denials related to Payne's prior convictions.[36]

Counsel argued that the documents were cumulative of the certified records already admitted under Deputy Prudhomme.  The prosecutor argued that the documents were being included in the exhibit to further link Payne to the bedroom where the drugs and weapons were found.[37]  The Trial Court overruled defense counsel's objection and admitted the *in globo* exhibit.[38]  Thereafter, the prosecutor began to question Sergeant Modica about the details of the documents related to Payne's 1995 guilty plea to armed robbery and aggravated battery.[39]  Defense counsel objected again on the basis that the documents were not certified and the questioning went beyond that scope and instead was being used to establish the prior guilty plea.  The State argued that the documents were being used only to link Payne to the bedroom not to establish the prior convictions.  After the extended

---

[36]*Id*. at p. 66.

[37]*Id.* at pp. 66-67.

[38]*Id.* at p. 67.

[39]*Id.* at p. 68.

35

bench conference, the Trial Court overruled the objection.[40] Defense counsel later entered an similar and unsuccessful objection to the questioning regarding the 2002 conviction as well.[41]

Based on the record, counsel did object to the admissibility of the documents seized from Payne's bedroom with specific reference to the State's inappropriate attempt to use the documents to establish his prior criminal convictions. Counsel did what Payne claims he should have done. The fact that the objection was not successful does not amount to ineffective assistance. For this reason, Payne's claim here is without factual basis and fails to establish deficient performance by his counsel.

Payne has failed to establish that the denial of relief on this issue was contrary to or an unreasonable application of federal law. He is not entitled to relief on this claim.

### (f)    Failed to Object to or Obtain Identity of Confidential Informant to Preserve Right to Confrontation

Payne alleges that counsel provided deficient performance when he failed to move for disclosure of the identity of the Confidential Informant, thereby denying him of his right of confrontation. The State argues that the prosecution held a privilege to withhold the identity of the Confidential Informant especially where the informant was not involved in the transaction leading to the defendant's conviction and that the decision not to pursue a motion to disclose was within the ambit of counsel's trial strategy.

The state trial court denied relief on post-conviction review finding that the State was entitled to withhold the name of the informant under Louisiana law and that counsel did not act deficiently.

---

[40]*Id.* at p. 70.

[41]*Id*. at pp. 71-72.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. However, under both federal and state law, the prosecution is not required to disclose the identity of an informant unless the informant's identity is relevant and helpful to the defense of the accused or is essential to a fair determination of the trial. *Roviaro v. United States*, 353 U.S. 53, 59-63 (1957); *United States v. Edwards*, 133 F. App'x 960, 962 (5th Cir. 2005); *State v. Coleman*, 713 So.2d 440 (La. 1998). Like the federal courts, Louisiana has long recognized that the State's privilege to withhold the identity of a confidential informant is based on weighing the public interest in obtaining information against the defendant's right to prepare a defense:

> This is a privilege founded upon public policy and seeks to further and protect the public interest and law enforcement by encouraging persons to supply information to the police without fear of reprisal by the person to whom the information pertains. Thus, the identity of an informer should be made known to the accused only when a defendant's right to prepare his defense outweighs the need for protection of the flow of information.

*State v. James*, 396 So.2d 1281, 1284 (La. 1981) (citing, *e.g.*, *Roviaro*, 353 U.S. at 59).

In Louisiana, the courts are directed to "consider the 'particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'" *Coleman*, 713 So.2d at 441 (quoting *Roviaro*, 353 U.S. at 62). In Payne's case, he offers no reason to have overcome the privilege or how the confidential informant's testimony might have helped in his defense.

As noted by the respondent, Payne's conviction was not based on any direct drug activity related to or witnessed by the informant. Instead, the deputies located the drugs, drug paraphernalia, and weapons in Payne's room separate from any drug transaction with the informant or anyone else. The drug transaction with and information received from the informant did not form the basis of the

charges against Payne.  Payne has pointed to nothing to which the Confidential Informant could testify that would have aided his defense to warrant disclosure of the informant's identity.  The record discloses no benefit to him that would outweigh the public's interest in protecting that identity.

Under these circumstances, it was reasonable for the state courts to deny him relief on the finding that the State's privilege left no legal basis for counsel to have filed a motion to obtain the informant's identity.  Payne has not established that the denial of relief was contrary to, or an unreasonable application of, Supreme Court law.  Payne is not entitled to relief on this issue.

## IX.   Cumulative Errors of Counsel (Claim Nos. 6, 7)

Payne alleges that counsel's "errors" should be considered collectively to establish that he is entitled to habeas relief.  The United States Fifth Circuit has recognized that "although rare," "instances of cumulative trial errors may 'fit the Supreme Court's description of a denial of due process as 'the failure to observe that fundamental fairness essential to the very concept of justice.'" *Perez v. Dretke*, 172 F. App'x 76, 81-82 (5th Cir. 2006) (quoting *Derden v. McNeel*, 978 F.2d 1453, 1457 (5th Cir. 1992)).

However, in *Derden*, the Fifth Circuit held that "federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Derden*, 978 F.2d at 1454 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  Later, the Court further clarified when such errors may be considered:

> Under this doctrine, "errors of <u>state law</u>, <u>including evidentiary errors</u>, are <u>not</u> cognizable in habeas corpus." [*Derden*, 978 F.2d] at 1458 (emphasis added).

Instead, such errors are of the requisite constitutional nature only if they "infuse[ ] the trial with unfairness as to deny due process of law."  *Id*. (quoting [*Lisenba v. California*, 314 U.S. 219, 228 (1941)]).

*Perez*, 172 F. App'x at 82 (emphasis in original).

The *Perez* Court did not specifically address whether a federal habeas claim could be made for the cumulation of deficiencies in the performance of counsel under *Strickland*.  To evaluate such a claim, this Court must review the individual contentions of ineffective assistance, and if they are meritless, that result cannot be changed simply by asserting the same claims collectively.  It is well settled that "ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions."  *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006) (citing *Miller*, 200 F.3d at 286 n.6); *Sholes v. Cain*, 370 F. App'x 531, 535 (5th Cir. 2010).  As the Fifth Circuit has noted with respect to analogous claims of cumulative error by counsel: "Twenty times zero equals zero."  *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987).

The Court has reviewed each of the alleged errors of defense counsel.  None demonstrate an error in counsel's performance that could have caused any cumulative prejudicial effect.  *See Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (citing *Derden*, 978 F.2d at 1454, 1461) (Meritless claims or claims that are not prejudicial cannot be cumulated regardless of the total number raised)).  Payne has failed to establish that denial of relief on this issue, or any facet of his ineffective assistance of counsel claim, was contrary to, or an unreasonable application, of Supreme Court law, including but not limited to *Strickland*.

X.      **Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Carl Payne's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[42]

New Orleans, Louisiana, this 12th day of August, 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[42]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.